RECEIVED Mail Room
DEC 16 2019
Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHRISTOPHER S. BARRY ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: 1:19-cv-03380 (UNA) |
| ) | |
| DAVID BERNHARDT ) | |
| Acting Secretary of the Department of Interior, ) | |
| Defendant. ) | |

## AMENDED COMPLAINT

Plaintiff Christopher Barry, pro se, in forma pauperis, alleges:

1. That the Department of Interior violated the Privacy Act of 1974, committed ethical violations by lying to OPM Security Investigators and committed perjury while under oath in an effort to discriminate against and blacklist the Plaintiff, Christopher Barry.

2. Through this action. Christopher Barry seeks to compel the Department of Interior to rectify the numerous untruthful statements still currently appearing in his personnel security file and provide remedies as stated below.

3. To-date, the Department of Interior has failed to adequately resolve this issue via the informal administrative complaint processes. This court should compel them to abide by the EEOC guidelines to resolve issues at the lowest possible level.

## PARTIES

4. Plaintiff Christopher Barry is the former Director of National Training of the Bureau of Safety and Environmental Enforcement (BSEE) within the Department of Interior (DOI). He is retired U.S. Navy and is a 100% Service-Connected Disabled Veteran who held a 25-year-old Top Secret (SCI) Security Clearance. He resides at 1611 Lindenwood Dr., Panama City, Florida 32405.

5. Defendant David Bernhardt is the Acting Secretary of the Department of Interior, Department of Interior and its Bureau of Safety and Environmental Enforcement (BSEE) are agencies of the Federal Government. DOI and BSEE headquarters are located at 1849 C St., N.W. Washington, DC 20240.

6. The allegations presented here occurred at the BSEE Headquarters at 1849 C St., N.W.

Washington, DC 20240.

## JURISDICTON AND VENUE

7. This Court has subject matter jurisdiction of this action and personal jurisdiction over the Department of Interior pursuant to 28 U.S.C. 1331 and 5 U.S.C. 552(a)(4)(B).

8. Venue is proper in this district under 5 U.S.C. 552(a)(4)(B).

9. Christopher Barry is deemed to have exhausted all of his administrative processes under the EEOC informal and formal processes.

## FACTS

10. Christopher Barry was hired as the DOI (BSEE) Director of National Training in September 2011. Doug Morris was hired as the DOI (BSEE) Chief of Offshore Programs in November 2011. Doug Morris was Christopher Barry's direct supervisor. Throughout December 2011 and April 2012 Christopher Barry reported widespread abuse, Prohibited Personnel Practices and mismanagement being committed by Doug Morris and several other Responsible Management Officials (RMO's) to BSEE Employee Relations and the BSEE Investigative Review Unit (IRU) who was conducting an investigation of wrongdoing in Mr. Morris department.

11. In 2012, Christopher Barry filed an EEO complaint against Mr. Morris of the Department of Interior (DOI), Bureau of Safety and Environmental Enforcement (BSEE). That EEO complaint was later considered a mixed case and referred to the MSPB. The case *Barry vs Department of Interior, Case No. DC-0752-14-0040-B-2,* was scheduled to be heard in December 2014, ultimately rescheduled and heard on 18 November 2015. In that case, Christopher Barry claimed Mr. Morris sought his resignation by fabricating a negative performance appraisal against him, and falsely accusing him of creating a hostile working environment, thus his *Constructive Discharge.* That case is pending final appeal in the MSPB System. Several motions for leave have been filed to present new evidence that shows Doug Morris was finally and ultimately investigated and found guilty by the DOI IG for the prohibited personnel practices and abuse reported by Christopher Barry in 2012. Mr. Morris was removed from his position as a result of the DOI IG investigations and is believed to no longer be in Federal Service.

12. On October 21, 2014, (two months prior to the then scheduled MSPB hearing) Mr. Morris was interviewed by OPM Security Investigators and declined to answer any questions. Four (4) days later Mr. Morris contacted OPM and asked them to allow him to provide answers to their questions.

Based on DOI's Summary Motion to Dismiss in the EEOC Case; Mr. Morris was told to "tell the truth" by senior leadership within BSEE. In that interview with OPM Security Investigators Doug Morris did not tell the truth, Mr. Morris stated:

1. Subject (Mr. Barry) received an unsatisfactory midyear performance evaluation for conduct issues.
2. Subject (Mr. Barry) made a number of racial slurs during a conversation, in spite of being requested to cease his continued racial slurs.
3. Subject (Mr. Barry) showed issues of being aggressive and having aggressive tendencies.
4. Subject (Mr. Barry) was known to "step-on-toes".
5. Subject (Mr. Barry) imposed on others area of operation.
6. Subject (Mr. Barry) pushed the envelope and seemed to put effort in finding loopholes to rules.
7. Subject (Mr. Barry) was overheard screaming at employee (Ms. Crump) about racial slurs.

**Causal Connection between the pending MSPB hearing and the comments made by Doug Morris in his interview with OPM Security Investigators.**

Mr. Morris' comments to OPM Security Investigators parallel directly with the pending MSPB hearing arguments. Only one month prior to the MSPB hearing, Mr. Morris reached out to OPM Security Investigators for a second interview and made false comments. The comments that he made were designed to retaliate against and blacklist Christopher Barry and put him and the Agency in a better position to defend the allegations of a construction discharge

> **Specifically:**
> **'Subject (Mr. Barry) received an unsatisfactory midyear performance evaluation for conduct issues".**

Mr. Morris stated he gave Christopher Barry a mid-term performance appraisal for conduct issues. Mr. Morris is a senior SES in the Federal Government and understands the "secret code" used by managers. He also understands the difference between "Performance" and "Conduct". He stated "Conduct" in retaliation. Mr. Morris violated Christopher Barry's right to privacy by discussing information with OPM Security Investigators that Mr. Barry was not aware of or ever agreed to release. The information he stated is in fact, false and protected. During the deposition of Mr. Middleton (Doug Morris' Deputy) he stated he and Mr. Morris understand the difference between "performance" and "Misconduct".

In his interview with OPM Security Investigators, Mr. Morris stated Christopher Barry was reliable but indicated that his opinions of Mr. Barry's judgement and reliability are flavored by accusations of impropriety levied against him (Mr. Barry) by Ms. Crump. His admission that his "opinions are flavored by accusations…" comes 3 years after then mid-term performance appraisal where Christopher Barry received all 1.0s for program elements not due for another six months. His opinions on Christopher Barry's performance and conduct were flavored then and during the OPM Security Investigators interview.  As a Senior Executive Mr. Morris is required to rise above his flavored opinions and present the truth as asked by his leadership. It was retaliation then and he is still retaliating against Christopher Barry for his original EEO claim in 2012. After the fact, in the ROI affidavit in *Barry vs OPM*, he further stated, "rather than using the term "conduct" without providing definition, I would have added language along the lines that Mr. Barry was given an unsatisfactory mid-year performance evaluation" attempting to retract his retaliatory comments made previously.

> **"Subject (Mr. Barry) made a number of racial slurs during a conversation, in spite of being requested to cease his continued racial slurs".**

During the Discovery phase of the EEOC case and being forced to compel, the Agency finally stated that Christopher Barry **did not** make racial slurs but instead made racially "insensitive comments". In the deposition of Mr. Middleton, he also confirmed Christopher Barry **never used** a racial slur. Nothing Mr. Barry said or did rises to the occasion of a racial slur or an "insensitive comment". During the MSPB testimony nothing was ever mentioned about racial slurs. On the day of Mr. Morris' interview with OPM Security Investigators was the first time the term "Racial Slur" was injected into the conversation as to what Christopher Barry said during a conversation with co-workers. In fact, he mentioned it three separate times during the interview. A racial slur is defined as a term that is divisive, contentious, and disruptive or in some way harms –it is a derogatory or disrespectful nickname for a racial group, used without restraint.  Mr. Morris specially used the term "Racial Slur" multiple times during the interview for retaliatory and blacklisting purposes. He knows that this term is career ending and he used it for that purpose. Adding, nothing in the MSPB transcripts or his investigation against Christopher Barry indicates he was repeatedly asked to stop making any comments.

> **"Subject (Mr. Barry) showed issues of being aggressive and having aggressive tendencies".**
> **"Subject (Mr. Barry) was known to "step on toes".**
> **"Subject (Mr. Barry) imposed on others area of operation".**
> **"Subject (Mr. Barry) pushed the envelope and seemed to put effort in finding loopholes to rules".**

During Christopher Barry's employment with Mr. Morris, he encouraged him (Christopher Barry) to be "aggressive" and "plow through the bureaucracy" that plaques the agency. He was routinely praised by Mr. Morris for his aggressive nature. During the interview with OPM Security Investigators, Mr. Morris specifically stated Christopher Barry was "aggressive" and "steps-on-toes" in an attempt to retaliate against him for the pending MSPB hearing. Again, after the fact, he later, in the OPM Affidavit, stated he "would have eliminated the term "aggressive tendencies" which I (Mr. Morris) do not recall using in the conversation".

What Mr. Morris did not do was express an interest in removing or rewriting the comments he made claiming Christopher Barry made racial slurs and was repeatedly asked to stop. He did state that he felt nothing he stated in the security file should be removed. Please note: OPM does not give interviewees the opportunity to comment, answer, read, and then review and edit their comments. OPM Security Investigators are trained to ask questions and wait for an answer. They then repeat back to the interviewee what they heard and with the interviewees acknowledgement they document the answer that was agreed to during the hearing.

The OPM Investigator (Mr. Lesko) stated in, *Barry vs OPM case, OPM EEO CASE No. 2016001,* "his report of investigation from the interview with Mr. Morris is an accurate reflection of what Mr. Morris said…" The OPM Investigator also stated after thousands of interviews he has only been called back for a second interview once and that was Mr. Morris.

"**Subject was overheard screaming at employee about racial slurs**".

Mr. Morris is making false claims. Christopher Barry never screamed at an employee about making "racial slurs". He is introducing the word racial slur again as a way of labeling Christopher Barry as a racist. In the Summary Motion during the EEO hearing, DOI claims Christopher Barry was overheard screaming at an employee for speaking to Mr. Middleton about an investigation and requesting the employee to change her testimony. DOI simply glossed over the mention of racial slurs again. In the administrative investigation conducted by Doug Morris and Mr. Middleton that supposedly uncovered these crimes committed by Christopher Barry there was no testimony documented. There are no affidavits, no signatures, no dates and no evidence that racial slurs where used. In previous testimony provided by Mr. Middleton he stated is has never been trained or received any education in conducting investigations of any sort.

**On 10 July 2015 during the ROI, Mr. Morris stated:**

> "One of the allegations made by his staff person related to misuse of credit cards. And I believe I did tell the investigator that we found no basis for that".
>
> "I provided information on several procurement concerns".
>
> "He made it clear Mr. Barry denied these accusations".

After investigating and finding no basis for Contract fraud, leave fraud, Credit Card fraud, Mr. Morris continued to talk about the allegations. He stated he "provided information on several procurement concerns" however, "I made it clear he (Mr. Barry) denied these accusations". During the MSPB ROI he states he read the investigation and understood the findings that no fraud was found. Why continue to talk about it? It is meant to cast doubt and discredit Christopher Barry for unfounded allegations – Retaliation! At the time of the Security Interview, Mr. Morris clearly understood that he charged and found no basis for multiple fraud accusations – asked and answered!

> "I'm not aware of any – maybe I'm not understanding your question, but I don't know that there's an allegation about misconduct at a meeting".
>
> "Mr. Barry was aware of these allegations".

In the June 2012 email to Christopher Barry, Doug Morris stated the "misconduct discussion during our performance meeting". Mr. Morris told OPM Security Investigators that Christopher Barry was aware of the charges against him. Christopher Barry only learned of the charges against him during the Discovery phase of the MSPB hearing. Mr. Morris never informed Christopher of any charges, specifically credit card abuse, contract fraud, and leave fraud. He only told Mr. Barry that one of his employees had claims of a hostile environment, no specifics where given while Christopher Barry was an employee of Mr. Morris.

## CASUE OF ACTION

13. Christopher Barry repeats, realleges and incorporates the allegations in the foregoing paragraphs as though full set forth herein.

## REQUEST FOR RELIEF

14. In 2014, Christopher Barry applied for and was selected as the Director of Policy and Curriculum at the Federal Law Enforcement Training Center in Glenco, GA. In early 2015 Christopher Barry sold his home in the DC area at a severe loss and relocated to Savannah, GA. Later in 2015, the FLETC, Glenco, GA position was rescinded due to the untruthful comments made by Doug Morris. To-

date, the Agency and its representatives have known of the untruths and abuses of Mr. Morris towards Mr. Barry and have done nothing to change or correct the situation. The Agency and its Responsible Management Officials have ignored and denied any knowledge of wrongdoing by Mr. Morris. The Agency possess and refuses to release via FOIA DOI IG reports that show the mismanagement and prohibited personnel practices of Mr. Morris and others at BSEE. They know that those DOI IG reports define the character of Mr. Morris as well as his propensity to lie and manipulate. DOI (proper) is culpable and Christopher Barry is asking this court to hold DOI accountable for the actions and lack of responsible actions of their Responsible Management Officials.

Christopher Barry is requesting the following remedies from DOI.

> Compensation in the amount of lost wages and benefits since June 2012.
> Subjects Federal TSP account corrected and up to date.
> Subject returned to Federal Service and authorized to retire.
> Subjects military service bought back and added to his Federal Service.
> Compensatory damages in the amount of 500,000.00.
> Subjects lost annual and sick leave returned and authorization to sell back.

15. Christopher Barry is requesting a trial by jury.

16. Christopher Barry is requesting a court appointed attorney to assist with case. Motion has been filed.

17. Christopher Barry is requesting authority to e-file his case (Pacer Account #6165268).

Date: 10 December 2019         Respectfully Submitted,

By: *(signature)*
Christopher S Barry
Pro Se
1611 Lindenwood Dr.
Panama City, Fl 32405
912-250-9633
ChrisBarrySAV@Gmail.Com