## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CHRISTOPHER S. BARRY,

       *Plaintiff*,

  v.

DEBRA HAALAND, Secretary, U.S.
Department of the Interior,

       *Defendant.*[1]

No. 19-cv-3380 (DLF)

## MEMORANDUM OPINION

    Christopher S. Barry brings this action against his former employer, the Secretary of the Department of the Interior (DOI), for violating the antiretaliation provision of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a).  Barry alleges that the Secretary provided a negative job reference, resulting in the loss of a conditional job offer, in retaliation for Barry's complaint that he had been subject to a hostile work environment at DOI.  Before the Court is the Secretary's Motion for Summary Judgment, Dkt. 50.  For the reasons discussed below, the Court will grant the motion.

## I.    BACKGROUND[2]

### A.    Employment at the Department of Interior and initial EEO activity

    From September 2011 to June 2012, Barry was employed as the Director of the National Offshore Training and Learning Center (Learning Center) at DOI.  Def.'s Stmt. of Material Facts

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the current Secretary of the Interior is substituted as the party defendant.

[2] Unless otherwise noted, the facts as described are not in dispute.  Because Barry failed to comply with Local Civil Rule 7(h)(1) and the Court's Standard Order for Civil Cases, Dkt. 8, which

¶ 2.   The Learning Center fell within the Office of Offshore Regulatory Programs (Offshore Programs), led by Doug Morris and Bob Middleton, which in turn was in the Bureau of Safety and Environmental Enforcement (the Bureau).  *Id.* ¶ 7; Def.'s Mem. Ex. 7 (Final Agency Decision on 2012 Complaint) at 1, Dkt. 50-10.

On May 7, 2012, one of Barry's subordinates complained to Morris that Barry was creating a hostile work environment.  Def.'s Stmt. of Material Facts ¶ 6; *see* Def.'s Mem. Ex. 6 (Memo of Allegations), Dkt. 50-9.   According to that employee, Barry "made remarks with racial and perceived hostile overtones," "used abusive language with [another] subordinate" in the presence of others, and made "remarks [inappropriately] derogatory of [Bureau] management."  Memo of Allegations at 1.  Middleton investigated the complaint, and he concluded on July 20, 2012 that Barry had "show[n] inappropriate behavior as a senior manager" and "did, in fact, create a hostile work environment as perceived by [his subordinate]."  *Id.* at 3.  His conclusion was based on corroboration from another employee as to at least one of Barry's alleged racial comments.  *Id.*

While that investigation was ongoing, on May 10, 2012, Morris and Middleton conducted Barry's mid-year review.  Def.'s Stmt. of Material Facts ¶ 16.  Middleton documented that discussion in an email to Barry, and he noted that Barry had failed to "provide[] sufficient management oversight to effectively improve progress" on Bureau projects and, when "significant hurdles" arose, had not kept his supervisors "sufficiently appraised" or "proposed any viable solutions."  Def.'s Mem. Ex. 2 (Mid-Year Review Email) at 2, Dkt. 50-5.  Middleton also described

---

required him to submit a statement of material facts still in dispute supported by citations to the record, the Court will "treat as conceded any facts asserted in the [defendant's] statement of facts" unless expressly disputed by the evidence.  Standard Order ¶ 5(b)(v); *see also Burke v. Gould*, 286 F.3d 513, 517 (D.C. Cir. 2002).  Although Barry is a *pro se* litigant, he was specifically notified of these consequences, *see* Order of June 1, 2020 at 2, Dkt. 16, and so the Court will enforce them. *Oviedo v. Wash. Metro. Area Transit Auth.*, 948 F.3d 386, 397–98 (D.C. Cir. 2020).

Barry's "general supervision and management" performance as "unsatisfactory" because, among other things, he "failed to motivate subordinates," he "verbally berated a subordinate and used inappropriate language," and his conduct had resulted in a subordinate complaining of a hostile work environment.  *Id.* at 2–3.  Because of their concerns about Barry's management style, Middleton and Morris offered Barry a non-managerial assignment at the same pay and grade, which Barry refused.  *Id*. at 3.  Barry responded by email that he found his poor review "disappointing and surprising," and he disputed that he was responsible for creating a hostile work environment in the Learning Center.  *Id.* at 1.  Later that day, Barry filed an informal EEO complaint alleging that he was being subjected to a hostile work environment within Offshore Programs.  Def.'s Mem. Ex. 4 (2012 Informal EEO Complaint) at 3, Dkt. 50-7.

The following day, on Friday, May 11, 2012, Morris notified Barry by email that Barry would begin a detail at the Main Interior Building effective Monday, "pending the results of an administrative inquiry into workplace concerns within [Offshore Programs] and [the Learning Center]."  *Id.* Ex. 3 (Detail Email), Dkt. 50-6.  On June 22, 2012, Barry "decided to resign effective immediately," not voluntarily but "due to the hostile working environment created by" others.[3]  *Id.* Ex. 5 (Resignation Email) at 1–2, Dkt. 50-8.

Also on June 22, 2012, Barry pursued a formal EEO complaint, claiming sex and sexual orientation discrimination and reprisal for EEO activity when he was harassed, subjected to a hostile work environment, given a forced detail, and constructively discharged.  Final Agency Decision on 2012 Complaint at 1–2.  In September 2013, DOI issued a final decision on Barry's

---

[3] Barry later represented that he "resigned on his own volition," Def.'s Mem. Ex. 10 (Barry's Response to DHS Notice) at 2, and that he "originally resigned giving the Agency 2 months' notice," Pl.'s Surreply at 1.  Neither is material to the Court's analysis.

formal EEO complaint, concluding that he had not been subjected to discrimination or harassment on the basis of sex, sexual orientation, or protected EEO activity.  *Id.* at 21.[4]

**B.      Conditional offer of employment at the Department of Homeland Security**

In June 2014, the Department of Homeland Security (DHS) extended Barry a conditional offer of employment as a Supervisory Instructional Systems Training Manager.  Def.'s Stmt. of Material Facts ¶ 4.  The offer was conditional on successful completion of a background check. *Id.*  Barry submitted a Standard Form 86 Questionnaire for National Security Positions, which required him to, among other things, disclose his prior employment and whether he left under unfavorable conditions.  *Id.* ¶ 32.  Investigators from the Office of Personnel Management (OPM) conducted the background check.  *Id.* ¶ 23.

In conducting the background check, OPM investigators interviewed many of Barry's prior supervisors, including Morris.  *Id.* ¶¶ 24, 26, 28, 29. When the investigator first contacted Morris on October 21, 2014, Morris refused to comment due to the then-ongoing EEOC investigation.  *Id.* ¶ 29 (citing Def.'s Mem. Ex. 8 (OPM Investigation Report) at 35, Dkt. 50-11).  Morris then consulted DOI lawyers and subsequently "stated [his] willingness to participate" in the interview. OPM Investigation Report at 36.  On November 4, 2014, Morris answered the OPM investigator's questions and noted, among other things, Barry's "unsatisfactory midyear performance evaluation . . . due to his conduct"; "allegations of misconduct submitted by a member of the staff" that included "racial slurs"; "issues with being aggressive"; "effort into finding loopholes to rules";

---

[4] Barry appealed the denial of the constructive discharge claim to the Merit Systems Protection Board (MSPB), which dismissed for lack of jurisdiction.  Def.'s Mem. Ex. 19 (MSPB Initial Decision on 2012 Complaint) at 1, Dkt. 50-22.  The Board reasoned that "a resignation . . . is presumed to be voluntary and beyond the Board's jurisdiction," and Barry failed to demonstrate that DOI imposed the terms of his resignation, that he had no realistic alternative, and that he resigned because of DOI's improper actions.  *See id.* at 22–24.

4

and "chastise[ment]" of—including "screaming at"—the other subordinate who had "voluntarily spoke[n] to investigating officials regarding [Barry's] racial slurs." *Id.* at 36–37.  Middleton was not interviewed.  Def.'s Stmt. of Material Facts ¶ 36.

The OPM investigator also interviewed two managers at the Department of Treasury, where Barry briefly worked after he resigned from DOI, and one at FEMA, where Barry worked prior to DOI.  *See id.* ¶¶ 1, 3.  The managers at Treasury likewise reported Barry's "issues pertaining to his professional reputation, honesty and integrity, judgment and discretion, [and] following of rules"; "disregard[ for] orders and directives"; "inability to compromise"; "fight or flight mentality"; "personality conflict issues"; multiple "threat[s] to resign"; and "immature and irresponsible" actions, among other things.  OPM Investigation Report at 24–25, 29–30.  Neither manager recommended Barry.  *Id.* at 24, 29.  The FEMA supervisor reported that Barry had accused another supervisor of making "sexual innuendos and harassing verbal undertones" about Barry's homosexuality.  *Id.* at 39.

After the OPM investigation concluded, on January 13, 2015, DHS sent Barry an official letter stating that the investigation "raise[d] a concern regarding [his] suitability for employment" with DHS.  Def.'s Mem. Ex. 9 (DHS Notice of Proposed Action) at 2, Dkt. 50-12.  It found that Barry "failed to disclose" some of his employment history and that, although Barry "denied [he] left employments under unfavorable conditions," employment checks at Treasury, FEMA, and DOI revealed otherwise.  *Id.* at 1.  It also cited evidence of poor work ethic and interpersonal conflicts at Treasury, DOI, and FEMA.  *Id.* at 1–2.  In summary, it stated, Barry's "personal conduct in the workplace was seen as untrustworthy, unreliable, and/or an unwillingness [sic] to comply with rules and regulations" at all three agencies.  *Id.* at 2.

5

The Notice allowed Barry to respond with comments, explanations, or evidence. *Id.* Barry did so on January 19, 2015, stating that the "alleged problems at [Treasury]" were "baseless" and those at FEMA and DOI were "clear retaliation" for two different EEO complaints. *See* Barry's Response to DHS Notice at 1–3. Furthermore, Barry stated that while at DOI he was "never negatively counseled or coached for any reason." *Id.* at 2. Unpersuaded, DHS withdrew its conditional offer of employment on March 30, 2015, explaining that the background check revealed "certain derogatory information . . . adversely impacting our determination as to your suitability for employment for the . . . position at DHS." Def.'s Mem. Ex. 13 (DHS Withdrawal Letter) at 1, Dkt. 50-16.

### C.   Subsequent EEOC complaints

Shortly thereafter, Barry contacted an EEO counselor to report that Morris, Middleton, and another DOI supervisor had made "false and inflammatory comments" about him that resulted in him "not [being] eligible for Federal employment." *Id.* Ex. 11 (DOI Notice of Right to File 2015 Complaint) at 1, Dkt. 50-14. He filed a formal EEO complaint on February 10, 2015, claiming that those "negative comments," which resulted in the denial of a "clearance for a GS-15 position," were retaliation against him for his previous and current EEO activity.[5] *Id.* Ex. 14 (DOI Letter Acknowledging 2015 Complaint) at 1, Dkt. 50-17.

---

[5] The record clarifies that the alleged denial of the security clearance and DHS's withdrawal of its conditional offer of employment refer to the same thing. *See, e.g.*, Def.'s Mem. Ex. 16 (Transcript of Barry Interview) at 4, Dkt. 50-19 ("I received a letter from [DHS] saying that my security clearance and therefore my job offer that I received from them was in question because of negative comments made by an employment source at [DOI]."); *id.* Ex. 25 (DOI Investigation on 2018 Complaint) at 8, Dkt. 50-28 (describing Barry's testimony that "he was hired by [DHS]"; that "during the course of the security check process, the security investigators interviewed . . . Morris"; and that subsequently "DHS withdrew its offer of employment").

In the subsequent EEO investigation, Morris confirmed that he had talked to an OPM investigator conducting Barry's background check. *Id.* Ex. 17 (Transcript of Morris Interview) at 7–8, Dkt. 50-20. He stated that he had "sought guidance" from DOI lawyers about whether and how to respond to the investigator. *Id.* at 17. Morris also acknowledged he told the OPM investigator that he received a complaint about Barry creating a hostile work environment, gave a "general description of the range of allegations" supporting that complaint, and said that Barry had received a poor mid-year review. *Id.* at 8–9, 12, 17. According to Morris, he was not aware of the DHS conditional offer of employment at the time, and his statements were "factual" and not designed to interfere with Barry's security clearance. *Id.* at 8, 13.

On April 13, 2018, an EEOC Administrative Judge granted summary judgment for DOI. Def.'s Mem. Ex. 20 (EEOC Decision on 2015 Complaint) at 2, Dkt. 50-23. The judge concluded that DOI had a legitimate, nondiscriminatory reason for the negative comments about Barry; that Barry failed to present evidence of pretext; and that Barry did not demonstrate a causal nexus between his 2012 EEO activity and denial of clearance in January 2015. *Id.* at 6. The Administrative Judge's decision was affirmed on September 27, 2019. Def.'s Stmt. of Material Facts ¶ 39.

Finally, Barry contacted an EEO counselor again on June 15, 2018. *Id.* ¶ 40. He sought another formal EEO investigation, alleging discrimination based on physical disability, mental disability, gender, and reprisal based on another alleged negative reference check by Bureau management, "causing him to be blacklisted and unable to obtain Federal and other employment." Def.'s Mem. Ex. 25 (DOI Report on 2018 Complaint) at 7, Dkt. 50-28. That claim was based on statements Middleton made to a private investigator that Barry hired to pose as a prospective employer. *Id.* Middleton allegedly told the private investigator that Barry "left [DOI] under a

cloud of circumstances," that he had investigated Barry for "accus[ations] of creating a hostile work environment," and that, although he was "not at liberty to discuss the findings of the investigation," Barry had since "filed numerous complaints with EEOC and other authorities." Def.'s Mem. Ex. 21 (Reference Check Report) at 2, Dkt. 50-24. Based on that information, Barry concluded that Middleton "was the person who was lying about him and blacklisting him from future federal and other civilian employment." DOI Report on 2018 Complaint at 7. Barry moved to withdraw this EEO complaint prior to entry of a decision and the Administrative Judge dismissed it on August 20, 2020. Def.'s Stmt. of Material Facts ¶¶ 44–45.

### D.   Procedural History

Barry filed this suit on November 7, 2019, Dkt. 1, and filed an Amended Complaint on December 16, 2019, Dkt. 5. On March 29, 2021, the Court dismissed claims brought under the Privacy Act, Freedom of Information Act, and Title VII's discrimination prohibition for failure to state a claim. Mem. Op. at 7 n.3, 12, 14, Dkt. 27. Remaining is only Barry's Title VII retaliation claim "based on [his] allegations that his former supervisor engaged in a campaign of blacklisting against [him] after [he] reported mismanagement by various employees of [DOI]." Minute Order of May 17, 2021 (quotation marks omitted). Following discovery, the Secretary moved for summary judgment on the retaliation claim. Dkt. 50.

## II.   LEGAL STANDARDS

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247–48 (1986). A "material" fact is one that could affect the outcome of the lawsuit. *See Liberty Lobby*, 477 U.S. at 248; *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006). A

dispute is "genuine" if a reasonable jury could determine that the evidence warrants a verdict for the nonmoving party.  *See Liberty Lobby*, 477 U.S. at 248; *Holcomb*, 433 F.3d at 895.  In reviewing the record, the court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."  *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000).

A party "opposing summary judgment" must "substantiate [its allegations] with evidence" that "a reasonable jury could credit in support of each essential element of [its] claims."  *Grimes v. District of Columbia*, 794 F.3d 83, 94 (D.C. Cir. 2015).  The moving party is entitled to summary judgment if the opposing party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III.   ANALYSIS

Title VII prohibits an employer from retaliating against an employee "because he has opposed any practice made an unlawful employment practice by [Title VII]" or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]."  42 U.S.C. § 2000e-3(a); *see Walker v. Johnson*, 798 F.3d 1085, 1091 (D.C. Cir. 2015) (applying § 2000e-3(a) to federal government agency).  "The role of the antiretaliation provision is to prevent employer interference with unfettered access to Title VII's remedial mechanisms."  *Chambers v. District of Columbia*, 35 F.4th 870, 877 (D.C. Cir. 2022) (quotation marks omitted).  If a plaintiff cannot present direct evidence of retaliation, the court assesses his claims under the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973).  *See Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009).

Under that framework, the employee "must first make out a prima facie case of retaliation." *Iyoha v. Architect of the Capitol*, 927 F.3d 561, 566 (D.C. Cir. 2019).  To establish a prima facie case of retaliation under Title VII, the plaintiff must show that (1) "he engaged in statutorily protected activity"; (2) "he suffered a materially adverse action by his employer"; and (3) "a causal link connects the two."  *Id.* at 574 (internal quotation marks omitted)  Adverse actions in the retaliation context are "not limited to discriminatory actions that affect the terms and conditions of employment, but reach any harm that well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Baird v. Gotbaum*, 662 F.3d 1246, 1249 (D.C. Cir. 2011) (citation and quotation marks omitted).  Post-employment actions can amount to a materially adverse action, *see Robinson v. Shell Oil Co.*, 519 U.S. 337, 339 (1997), including "efforts by an employer to scuttle a former employee's search for a new job, such as by . . . providing negative information to a prospective employer," *Passer v. Am. Chem. Soc.*, 935 F.2d 322, 331 (D.C. Cir. 1991).

There is no dispute that Barry engaged in protected activity in May 2012 when he filed an EEO complaint alleging that Morris was creating a hostile work environment.  *See* Def.'s Stmt. of Material Facts ¶ 20.  Barry alleges that he suffered a materially adverse action when Morris answered OMP investigators' questions negatively in 2014 and DHS subsequently withdrew Barry's conditional job offer.[6]  *See* Am. Compl. ¶¶ 11–12; Pl.'s Opp'n at 9–12, Dkt. 51.

---

[6] Barry's brief lists several other alleged adverse actions, *see* Pl.'s Opp'n at 7–9, but none except the negative job reference is properly before the Court.  *See* Minute Order of May 17, 2021; Minute Order of June 7, 2021; Order of July 23, 2021, Dkt. 39.  Furthermore, Middleton's comment to Barry's private investigator, *see* Def.'s Stmt. of Material Facts ¶¶ 41–42, is not relevant.  It is undisputed that Middleton did not speak with OPM investigators.  *See generally* OPM Investigation Report at 14–47.  Middleton's comment to a private investigator cannot constitute an adverse action because it did not cause Barry to be "denied employment." *Simmons v. Cox*, 495 F. Supp. 2d 57, 66 (D.D.C. 2007).

The Secretary contends that Barry has not stated a prima facie case for retaliation. However, the D.C. Circuit has instructed that if the employer "has asserted a legitimate, non-discriminatory reason" for the challenged action, "the district court need not—*and should not*—decide whether the plaintiff actually made out a prima facie case." *Brady v. Off. of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008). Because the Secretary's arguments apply equally to show that there was a legitimate and non-retaliatory reason for Morris's statements, the Court will heed the D.C. Circuit's admonition to proceed to step two of the burden-shifting framework.

### A.  The Secretary's non-retaliatory justification

At this step, four factors are "paramount in the analysis" of whether an employer has met its burden: (1) the employer must produce evidence that would be admissible at trial for a finder of fact; (2) "the factfinder, if it believed the evidence, must reasonably be able to find that the employer's action was motivated by a nondiscriminatory reason"; (3) the employer's justification must be "facially credible in light of the proffered evidence"; and (4) the employer must provide a "clear and reasonably specific explanation" for its action that is "articulated with some specificity." *Figueroa v. Pompeo*, 923 F.3d 1078, 1088–89 (D.C. Cir. 2019) (citations and quotation marks omitted). According to the Secretary, Morris's comments were justified as factual responses to the investigator's specific questions and reflected his truthful assessment of Barry's work. *See* Def.'s Mem. in Supp. of Summ. J. at 16–19, Dkt. 50-1. This justification is facially credible in light of the evidence in the record.

For one, the record shows that Morris did not proactively share his comments. To the contrary, when the OPM investigator reached out to him in October 2014, he initially "declined to comment . . . because of [the then-]ongoing EEOC investigation." OPM Investigation Report at 35. According to the OMP investigator's notes, Morris then "consulted with the [DOI] legal team"

and "stated willingness to participate further in the interview process." *Id.* at 36.  Morris explained

in a sworn statement that the DOI lawyers told him that he "had a legal obligation to answer the

investigator[']s questions" after verifying his credentials.   Transcript of Morris Interview at 17.

He stated that he answered the questions "factual[ly]." *Id.* at 13.  This undisputed evidence supports

the Secretary's assertion that Morris's comments were justified as specific responses to the

investigator's questions and not out of a retaliatory motive.[7]

More importantly, the evidence in the record supports each of Morris's statements to OPM

investigators, further supporting the asserted non-retaliatory justification for making them.  First,

Morris stated to the investigator that Barry "received an unsatisfactory midyear performance

evaluation . . . due to his conduct."  OPM Investigation Report at 36.  That is a factual statement,

supported by Morris's documentation of the "mid-year review conducted by Doug Morris and Bob

Middleton" on May 10, 2012, in which Barry was "informed that [his] performance" on certain

elements "w[as] not satisfactory."  Mid-Year Review Email at 2.  That email detailed the reasons

for Barry's unsatisfactory review, including his failure to keep supervisors informed of issues,

propose solutions to roadblocks, and motivate his team.  *Id.*  Barry's mid-year review was also

based on the allegation that Barry had created a hostile work environment for one subordinate and

made another "uncomfortable with [his] management style."  *Id.* at 2–3.

Second, Morris stated to the OPM investigator that an unnamed team member had made

"allegations of misconduct" claiming that Barry had "made a number of racial slurs during a

---

[7] Barry contests Morris's explanation for his later willingness to be interviewed, arguing that an upcoming MSPB hearing is what motivated Morris to "call[] OPM and ask[] for an unprecedented second interview."  *See* Pl.'s Surreply at 9, Dkt. 54.  Barry's allegation is unsupported.  And "bare allegations of discrimination [or retaliation] are insufficient to defeat a properly supported motion or summary judgment."  *Burke*, 286 F.3d at 520; *see also Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 150 (D.C. Cir. 1996) (requiring "the opposing party [to] point[] to affirmative evidence showing disputed material facts" (quotation marks omitted)).

conversation"; that Barry "chastised" and "scream[ed] at" another employee who corroborated the incident underlying that complaint; and that "[b]ecause of these allegations, [Barry] was reassigned to a temporary detail and then resigned." OPM Investigation Report at 36–37. Again, each of these statements is factual and supported by the record. Middleton documented on July 20, 2012 that one of Barry's subordinates made allegations of such misconduct, *see* Memo of Allegations at 1, and that subordinate later testified under oath to that effect, *see* Def.'s Mem. Ex. 18 (Transcript of MSPB Proceedings) at 25, Dkt. 50-21.[8] Another employee testified under oath that she witnessed an incident involving racial comments, and after she told Middleton about it, Barry "yell[ed] and scream[ed]" at her. *Id.* at 29–30, 32. Finally, Morris did assign Barry to a temporary detail "pending the results of an administrative inquiry" into the allegations, Detail Email at 1, and Barry resigned shortly thereafter, Resignation Email at 2. In response, Barry argues only that he "never had a [hostile work environment] claim," "EEO complaint," or "Administrative Grievance filed against him," Pl.'s Surreply at 2—but even if true, this is irrelevant, as Morris never told the OPM investigator that the "allegations" were formally filed. *See* OPM Investigation Report at 36.

Third, Morris gave the OPM investigator a general description of Barry's "reputation among his coworkers" at DOI. *Id.* Morris made some positive observations, including that Barry was "articulate" and "reliable," but he also stated that Barry was "aggressive," "known to 'step on

---

[8] Barry appears to challenge the admissibility of the Memo of Allegations, stating that it is not a "credibl[e]" investigation because it "was not signed nor dated, has no affidavits, no sworn testimony, and it makes claims that are disputed by testimony taken under oath." Pl.'s Opp'n at 13. The rigor of the Memo's investigation is immaterial. The Secretary does not rely on it "to prove the truth of the matter asserted" in it, Fed. R. Evid. 801(c)(2), but only to show what Morris "ha[d] heard"—a use not prohibited by the Federal Rules of Evidence. *Dutton v. Evans*, 400 U.S. 74, 88 (1970); *see also Ali v. District of Columbia*, 810 F. Supp. 2d 78, 83 (D.D.C. 2011) (explaining that materials are admissible if "offered to show that certain statements were made or to establish the effect of those statements on their recipients"). In any event, the complaints to Morris are separately supported by sworn testimony. *See* Transcript of MSPB Proceedings at 25.

toes,'" and "seemed to put effort into finding loopholes to rules," among other things.  *Id.*  Though these statements were opinions, the evidence supports that Morris made them because he thought Barry's performance was inadequate.  Dissatisfaction with an employee's performance based on poor performance is a legitimate and non-discriminatory reason for giving a negative job reference. *Paquin v. Fed. Nat'l Mortg. Ass'n*, 119 F.3d 23, 29 (D.C. Cir. 1997); *Hogan v. Hayden*, 406 F. Supp. 3d 32, 44 (D.D.C. 2019).

The Secretary has provided evidence that could lead a factfinder to reasonably believe that Morris's negative opinion comments were made because he was justifiably dissatisfied with Barry's performance as a manager.  *See Figueroa*, 923 F.3d at 1088–89.  Morris documented in Barry's mid-year review that "[i]t ha[d] come to [his] attention that [Barry] had verbally berated a subordinate and used inappropriate language" and that Barry "did admit to using inappropriate language."  Mid-Year Review Email at 2.  As recorded in that review, at least two of Barry's subordinates reported being "uncomfortable with [his] management style."  *Id.* at 2–3.  And Morris's impression of Barry's reputation as a manager was apparently not unique.  *See* OPM Investigation Report at 25 (manager describing Barry's "issues pertaining to . . . following of rules" and "disregard[ing] order and directives"; his "inability to take direction from the [manager]," which led into confrontation"; and his "many interpersonal conflicts with others" at Treasury).

In sum, if a factfinder credited all of this evidence, it could reasonably find that each of Morris's negative comments to the investigator were motivated by a non-retaliatory reason— namely, that Morris responded truthfully to the investigator's questions by describing allegations Barry's interpersonal difficulties and performance at DOI.  *See Figueroa*, 923 F.3d at 1088.  That proffered reason is facially credible given the record evidence.  *See id.*  The fourth and final *Figueroa* factor is also satisfied, as the Secretary's explanation is "clear and reasonably specific."

*Id.* (quotation marks omitted). The Secretary has given "specific examples and produced testimony and exhibits that show" that Barry in fact had allegations of misconduct made against him and in fact performed poorly in certain respects, resulting in a negative review. *Hogan*, 406 F. Supp. at 44 (quoting *Figueroa*, 923 F.3d at 1088). Because Morris's statements to the investigator are all supported by evidence in the record, the Secretary has met her burden to show that the statements were justified.

### B. Barry's evidence of pretext

Once an employer has satisfied its burden of showing a legitimate and non-discriminatory justification for the challenged action, "the burden-shifting framework disappears, and a court reviewing summary judgment looks to whether a reasonable jury could infer . . . retaliation from all the evidence." *Jones*, 557 F.3d at 677 (quotation marks omitted). At this stage, the Court considers whether the plaintiff can meet his burden to show that the employer's explanation is merely a pretext for discrimination. *Brady*, 520 F.3d at 494. To do so, a plaintiff can point to "the employer's better treatment of similarly situated employees outside the plaintiff's protected group, its inconsistent or dishonest explanations, its deviation from established procedures or criteria, or the employer's pattern of poor treatment of other employees in the same protected group as the plaintiff, or other relevant evidence that a jury could reasonably conclude evinces an illicit motive." *Walker v. Johnson*, 798 F.3d 1085, 1092 (D.C. Cir. 2015).

Barry provides neither comparator evidence showing the job references Morris (or anyone else at DOI) gave to other employees, nor evidence of a pattern of poor treatment against those who filed EEOC complaints, nor deviation from established procedures. Instead, Barry's primary argument is that all of Morris's statements to the OPM investigator were "perjured . . . under oath." *See* Pl.'s Opp'n at 10–12. Barry appears to argue that Morris fabricated the basis for the underlying

incidents out of a retaliatory or discriminatory motive, so describing those incidents to the OPM investigator was likewise retaliatory.

An employee may show pretext by "attempt[ing] to demonstrate that the employer is making up or lying about the underlying facts that formed the predicate for the employment decision." *Brady*, 520 F.3d at 495.  But "[i]f the employer's stated belief about the underlying facts is reasonable in light of the evidence . . . , there ordinarily is no basis for permitting a jury to conclude that the employer is lying about the underlying facts." *Id.*  Here, Morris's belief in the facts underlying his statements to OPM investigators is reasonable.  The record shows a clear chain of events: on May 7, 2012, Morris and Middleton received a complaint from Barry's subordinate that he was creating a hostile work environment for her, Memo of Allegations at 1; three days later, they discussed those "serious allegations" with Barry, Mid-Year Review Email at 3; and one day after that, because of those concerns, Morris assigned Barry to a temporary non-management position, Detail Email at 1.

Barry has not provided any evidence that Morris made up or lied about these facts.  Instead, Barry simply asserts that he "was never found guilty of any misconduct" and denies that he created a hostile work environment for others or made racial slurs.  Pl.'s Opp'n at 10, 12–13; Pl.'s Surreply at 5–6.  Even setting aside the conclusory nature of these arguments, the veracity of the underlying allegations against Barry is not before the Court.  "The question is not whether the underlying [hostile workplace environment] incident[s] occurred; rather, the issue is whether [Morris] *honestly and reasonably believed* that the underlying [hostile workplace environment] incident[s] occurred." *Brady*, 520 F.3d at 496.  The allegations made against Barry are relevant only insofar as they show the reason for Morris's statements to the OPM investigator.  There is no genuine dispute that Morris "reasonabl[y] belie[ved]" Barry made a racial slur and made his subordinates

uncomfortable, so his statements were "justified . . . even though that reason may turn out to be false." *George v. Leavitt*, 407 F.3d 405, 415 (D.C. Cir. 2005). And Barry did not "produce evidence sufficient to show that [Morris's] conclusion was dishonest or reasonable." *Brady*, 520 F.3d at 496.

Barry's remaining arguments are similarly conclusory and unpersuasive. First, Barry asserts that the underlying events were set in motion in retaliation for an "interview with the [DOI's] Investigative Review Unit (IRU)" in April 2012 that he gave about Morris's alleged managerial misconduct. *See* Pl.'s Opp'n at 5; *see also id.* at 10 (stating that the mid-year review was a "weapon used . . . to punish [him] for speaking with the [Investigative Review Unit]"). But Barry identifies no evidence that such an interview actually occurred in April 2012.[9] Barry's bald assertion therefore does not constitute a genuine issue of fact. *See* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by: citing to particular parts of materials in the record . . . ."). Indeed, Barry's speculation that the underlying events were retaliatory is impossible based on the record, which shows that the earliest instance of protected activity was Barry's informal EEO complaint filed in the afternoon on May 10, 2012—*after* the underlying events described, including the mid-year review. *See* 2012 Informal EEO Complaint at 3–4.

---

[9] Throughout his brief, Barry cites only to general "PL Exhibit[s]," but he provides no attached exhibits or pincites. The Court construes these citations as referencing the list in Appendix B of Barry's "Rule 26(A)(1) Initial Disclosures," Dkt. 52. *See* Def.'s Reply at 8, Dkt. 53 (explaining Barry's statement that his exhibits referenced that list).

Here, Barry cites "PL Exhibit 4," which corresponds with "4. EEOC-570-2016-00072X (DOI-BSEE-15-0598) case records." Pl.'s App'x B, Dkt. 52-2. A citation to an entire body of administrative records is far from the "cit[ation] to particular parts of materials in the record" required to raise a genuine issue of fact. Fed. R. Civ. P. 56(c)(1)(A). In any event, the Court's independent review of those EEOC records finds no support for Barry's contention that he interviewed with the Investigative Review Unit in April 2012, nor that Morris knew of any alleged protected activity in April 2012.

As further support for his contention that the 2012 negative mid-year review and 2014 negative job reference were retaliatory, Barry argues that he was given positive performance reviews and indicators before he engaged in protected activity.  Pl.'s Opp'n at 18–20.  But again, Barry does not provide any record evidence of prior good performance, so he has not raised a genuine dispute of material fact.  *See* Fed. R. Civ. P. 56(c)(1).  Even if he had provided such evidence, it would not allow a reasonable juror to infer that Morris's negative comments were pretextual.  Morris never told the OPM investigator that Barry *only* received negative performance reviews; indeed, Morris commented on good things about Barry's work, including that he was "reliable" and "articulate."  OPM Investigation Report at 36.  Morris then explained that his perception of Barry was "flavored by" the 2012 allegations that Barry had created a hostile work environment for his subordinates and Barry's aggressive reaction to that allegation.  *Id.*  Thus, even if Barry had received good reviews in the past, the record still shows that his poor performance review in 2012 was motivated by the others' complaints *about* Barry in 2012, not by Barry's own protected EEOC activity.  *See Brady*, 520 F.3d at 495 (finding that adverse employment action was justified by complaints received about plaintiff).

In sum, the Secretary has asserted a legitimate, non-discriminatory reason for the negative statements Morris made to the OPM investigator, and Barry has not shown that these reasons are pretextual.  Therefore, even if the statements contributed to the withdrawal of Barry's conditional offer of employment, summary judgment for the Secretary is thus appropriate.  *See id.* at 496.

## CONCLUSION

For the foregoing reasons, the Court grants the defendant's motion for summary judgment.[10]  A separate order consistent with this decision accompanies this memorandum opinion.

_____
DABNEY L. FRIEDRICH
United States District Judge

September 29, 2022

---

[10] Plaintiff's Request for Status, Dkt. 56, construed as a motion for hearing, is denied as moot.  The Court notes that the Clerk of Court sent Barry a copy of the docket sheet on March 31 and August 9, 2022, apprising Barry of the status of the case at those times.  In addition, at various stages Barry has complained about the discovery process and timing.  *See id.*; Pl.'s Opp'n at 1–2.  But the Court has already resolved Barry's specific complaints, *see, e.g.*, Minute Order of August 23, 2021; Minute Orders of October 12, 2021, and Barry never requested a continuance of discovery.  Indeed, despite his complaints, Barry affirmatively indicated his desire to move forward.  *See* Joint Status Report and Proposed Briefing Schedule at 1–2, Dkt. 49; Pl.'s Opp'n at 3.